**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DELORES LATHAN,

          Plaintiff,

vs.                                        Case No. 3:09-cv-525-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Delores Lathan ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for supplemental security income. Her alleged inability to work is based on the physical and mental impairments of "arthritis, carpal tunnel syndrome, narcolepsy, asthma, nerve damage, GERD, glaucoma, herniated disc[,] and depression." Transcript of Administrative Proceedings (Doc. No. 11; "Tr.") at 32. On August 29, 2002, Plaintiff "protectively filed an application for supplemental security income, alleging disability beginning March 1, 1999." Tr. at 20; see Tr. at 87. Plaintiff's claim was initially denied on April 29, 2003, Tr. at 33-35, and again upon reconsideration on October 6, 2003, Tr. at 37-39.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 13), and the Order of Reference was entered on October 6, 2009 (Doc. No. 16).

An Administrative Law Judge ("ALJ") held a hearing on April 5, 2006, Tr. at 907-81, and issued a Decision on October 25, 2006, finding Plaintiff not disabled through the date of the Decision, Tr. at 20-28. On April 14, 2009, the Appeals Council denied Plaintiff's request for review. Tr. at 7-10. On June 11, 2009, Plaintiff commenced this action by timely filing a Complaint (Doc. No. 1) seeking review of the Commissioner's final decision. Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff, who was fifty-two years old at the time of her hearing before the ALJ, Tr. at 914, raises three issues in support of her argument that the ALJ's Decision should be reversed: (1) whether the ALJ adequately considered the severity of Plaintiff's physical impairments and their impact on her functioning; (2) whether the ALJ should have stated reasons for not crediting the opinion of William V. Choisser ("Dr. Choisser"), one of Plaintiff's examining physicians; and (3) whether the residual functional capacity ("RFC") assessment issued by the ALJ was "vague and nonspecific" with regard to Plaintiff's ability to sit, stand, and walk. See Memorandum in Opposition to the Commissioner's Decision (Doc. No. 16; "Pl.'s Mem.") at 1, 11-21. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds the ALJ did not adequately consider all of Plaintiff's physical impairments. In addition, the ALJ did not state the weight given to the opinion of Dr. Choisser. Therefore, the Commissioner's final decision is due to be reversed and remanded.

## II. The ALJ's Decision

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining

as appropriate whether the plaintiff: 1) is currently employed; 2) has a severe impairment; 3) has an impairment that meets or medically equals one listed in the Regulations; 4) can perform past relevant work; and 5) retains the ability to perform any work in the national economy.  See 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The ALJ performed the required five-step sequential inquiry set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  At step one, the ALJ established Plaintiff has not engaged in substantial gainful activity since March 1, 1999 (the alleged onset date).  Tr. at 22.  At step two, the ALJ found that Plaintiff suffers from the following severe impairments: "cervical herniated nucleus pulposus, mild degenerative disc disease of cervical spine, sleep disorder, pulmonary nodules, emphysema, bilateral carpal tunnel syndrome, headaches, dysthymia, and antisocial traits."  Tr. at 22.  At step three, the ALJ stated Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. at 22.  The ALJ determined Plaintiff has the following RFC:

> [T]o perform light work, or work which involves lifting no more than [twenty] pounds at a time with frequent lifting or carrying objects weighing up to [ten] pounds, a good deal of walking or standing, or sitting most of the time with some pushing or pulling of arm and leg controls.  She is able to climb, balance, stoop, kneel, crouch, and crawl occasionally.  She should avoid continuance [sic] exposure to cold.  She is not able to work around heights or hazards.  She must avoid exposure to pulmonary irritants.  She is frequently able to perform gross manipulation, fine manipulation, and reaching in all directions. [Plaintiff] has additional nonexertional limitations associated with her dysthymia and antisocial traits which impact her ability to perform the nonexertional demands of some more complex jobs.  However, she is capable of performing simple, routine, repetitive tasks.

Tr. at 22-23 (emphasis omitted).  At step four, the ALJ found that Plaintiff had "no past relevant work."  Tr. at 27.  At step five, the ALJ found Plaintiff could perform the following jobs

which exist in significant numbers in the national economy: "coupon redemption clerk"; "parking lot attendant"; and "ticket seller[.]" Tr. at 28. The ALJ concluded Plaintiff was not under a disability[2] from August 29, 2002 (the application date) through the date of the decision. Tr. at 28.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence'[.]" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

The Court must resolve the following issues: (1) whether the ALJ adequately considered the severity of Plaintiff's physical impairments and their impact on her functioning; (2) whether the ALJ should have stated reasons for not crediting the opinion of Dr. Choisser, an examining physician; and (3) whether the RFC assessment issued by the ALJ was "vague and nonspecific" with regard to Plaintiff's ability to sit, stand, and walk. Pl.'s Mem. at 1, 11-21. Each issue is addressed in turn.

### A. The ALJ's Consideration of Plaintiff's Impairments

Plaintiff argues the ALJ "erred in failing to analyze the severity of all [of Plaintiff]'s impairments and their impact on her functioning[.]" Pl.'s Mem. at 11. Specifically, Plaintiff contends the ALJ should have considered Plaintiff's fibromyalgia, her glaucoma, and her "chronic infarct/hemorrhage in the right frontal lobe and left temporal and frontal lobes[.]" Id. at 11,14.

An ALJ must consider all relevant evidence in the record when determining whether a claimant is disabled. 20 C.F.R. § 416.924(a). At step two of the sequential inquiry, the ALJ must determine whether a claimant suffers from a severe impairment. See 20 C.F.R. § 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921. Thus, an impairment or combination of impairments is severe if it interferes with a claimant's ability to perform "basic work activities." See Bowen v. Yuckert,

482 U.S. 137, 148 (1987). "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). Regardless of whether an impairment is found to be severe at step two, an ALJ must consider all of a claimant's impairments, and the functional limitations resulting from such impairments, in assessing an RFC. See Salas v. Astrue, No. 8:07-cv-1067-T-17TGW, 2008 WL 3165923, at *3 n.2 (M.D. Fla. Aug. 6, 2008) (unpublished); McCruter, 791 F.2d at 1547.

Here, at step two, the ALJ determined Plaintiff has the following severe impairments: "cervical herniated nucleus pulposus, mild degenerative disc disease of cervical spine, sleep disorder, pulmonary nodules, emphysema, bilateral carpal tunnel syndrome, headaches, dysthymia, and antisocial traits." Tr. at 22. The ALJ did not find that Plaintiff's fibromyalgia, glaucoma, and chronic infarct were severe impairments. See Tr. at 22. Regardless of whether the ALJ considered Plaintiff's fibromyalgia, glaucoma, and chronic infarct at step two, the ALJ did not consider the effects of Plaintiff's fibromyalgia at step four when determining Plaintiff's functional limitations. Tr. at 22-23. The Court reviews the manner in which the ALJ addressed Plaintiff's fibromyalgia, glaucoma, and chronic infarct.

### 1. Fibromyalgia

With regard to Plaintiff's fibromyalgia, Plaintiff identifies certain records in support of the severity of the condition. Pl.'s Mem. at 15-16 (referring to Tr. at 362 ("fibromyalgia"), 370 ("fibromyalgia"), 373 ("fibromyalgia"), 567 ("fibromyalgia"), 762 ("fibromyalgia"), 604 (attended Brooks Rehabilitation Program due to fibromyalgia). Defendant concedes the record indicates that Plaintiff "was diagnosed with fibromyalgia." Def.'s Mem. at 6. Defendant also concedes "the ALJ did not specifically mention Plaintiff's diagnosis of fibromyalgia" in his opinion. Id. at 7. Defendant maintains that this was harmless because "the ALJ did consider Plaintiff's testimony that she was unable to work due, in part, to pain in her lower back, legs, feet, hip, shoulder, and neck." Id. (citing Tr. at 23). The Court disagrees.

A review of the record reveals Plaintiff was diagnosed with fibromyalgia on multiple occasions. See Tr. at 362, 370, 373, 567, 569, 570, 578, 587, 762. Plaintiff was treated for her fibromyalgia by the Brooks Rehabilitation Center. Tr. at 604, 644. Despite the multiple diagnoses of fibromyalgia and the treatment Plaintiff received for the condition, the ALJ did not discuss Plaintiff's fibromyalgia at all in the Decision. See Tr. at 22-27. Because the ALJ did not at all discuss Plaintiff's fibromyalgia or its effects, the Court cannot glean from the ALJ's Decision if the ALJ considered whether the effects of Plaintiff's fibromyalgia impact her functional limitations. See Salas v. Astrue, 2008 WL 3165923, at *3 n.2; McCruter, 791 F.2d at 1547. Without an explanation as to the effects of Plaintiff's fibromyalgia on her functional limitations, the Court cannot review the ALJ's Decision for substantial evidence in this regard. Therefore, remand is required. On remand, the ALJ shall consider whether Plaintiff's fibromyalgia is a severe impairment, and whether or not it is found to be severe, the ALJ shall

consider the effects of Plaintiff's fibromyalgia on her functional limitations in arriving at the RFC.

### 2. Glaucoma

Regarding Plaintiff's glaucoma, Plaintiff cites one record to support that the condition exists. Pl.'s Mem. at 14 (referring to Tr. at 808 (Dr. Knox read questions to Plaintiff because of a history of glaucoma)). Plaintiff states that "[a]lthough the ALJ credited Dr. Knox's report, the ALJ failed to credit Dr. Knox's statement that [Plaintiff] had to be READ the questions due to her glaucoma." Id. (capitalization in original). Plaintiff mischaracterizes the context of Dr. Knox's statement, which actually reads as follows: "Due to reports of [g]laucoma, [Plaintiff's] older son and [Dr. Knox] read the questions to her." Tr. at 808. Dr. Knox's statement does not indicate that he had no other choice but to read the questions to Plaintiff, as Plaintiff suggests. Rather, it appears that due to Plaintiff's medical history of glaucoma, Dr. Knox took it upon himself to read the questions to Plaintiff.

The ALJ addressed Plaintiff's glaucoma in arriving at the RFC determination, stating that Jeffrey H. Levenson, M.D. ("Dr. Levenson"), Plaintiff's ophthalmologist, noted "when [Plaintiff] was last seen in October 2002 her vision corrected to 20/25 in each eye and visual field testing in March 2002 demonstrated no evidence of glaucomatous deficit." Tr. at 25. The Court is satisfied that the ALJ considered Plaintiff's glaucoma and its effects on her functional limitations in arriving at the RFC.

### 3. Chronic Infarct

Plaintiff concedes that the ALJ considered her infarct in 2004, but claims the ALJ did not consider the evidence following her infarct in September 2005. Pl.'s Mem. at 12, 13. The

-8-

ALJ stated that "[Plaintiff] has a history of cerebral infarction suffered in June 2004[.]" Tr. at 25. The ALJ observed that Plaintiff had "some nerve blocks in October 2005 for chronic headaches occurring from cervical spasms with mild relief of symptoms reported." Tr. at 25. The ALJ noted Plaintiff had "[a] normal neurological examination in October 2005 during a follow up for stroke and headache." Tr. at 26. The ALJ stated Plaintiff had "no lupus anti-coagulant detected in December 2005" and "no neurological deficits" in January 2006. Tr. at 26. It appears the ALJ did consider the relevant evidence following Plaintiff's infarct in September 2005. The Court is satisfied that the ALJ considered the effects of Plaintiff's chronic infarct on her functional limitations in arriving at the RFC.[3]

### B.     Opinion of Examining Physician Dr. Choisser

Plaintiff argues the ALJ "erred in failing to articulate any reasons for not crediting Dr. Choisser's examining opinion[.]" Pl.'s Mem. at 18-20. Plaintiff claims Dr. Choisser found Plaintiff suffered from fatigue and pain due to speaking difficulties and repetitive use of her extremities. Id. at 19. Plaintiff asserts this is contrary to the ALJ's finding that "[Plaintiff] did not have speech problems and also could frequently use her upper extremities." Id.

Here, Dr. Choisser performed a consultative examination on January 21, 2003. Tr. at 266-69. Dr. Choisser's evaluation of Plaintiff revealed the following:

> HEENT within normal limits. The lungs [were] clear, there is no sign of any significant respiratory impairment, however, there [we]re distant breath sounds consistent with [an] [a]sthma or bronchitis patient, but . . . there [wa]s no cyanosis, clubbing or dyspnea noted. Again, her [a]sthma attacks and hospitalizations [we]re two times per year every year since 1997. Heart ha[d]

---

[3]     In presenting her first issue, Plaintiff contends there is a "gap" in the record as to the medical evidence between September 2005 through the date of the Decision (October 25, 2006). Pl.'s Mem. at 18. Given that the matter is due to be remanded, the Commissioner shall allow Plaintiff to supplement the record with any medical documentation Plaintiff deems relevant to the instant issues.

> a regular rate and rhythm without murmurs, clicks or gallops. . . . There [wa]s paravertebral muscle spasm noted along the lumbar spine. Straight leg raises in both supine and seated positions [we]re just possible to about [twenty] degrees because of the leg pain and weakness that the patient experience[d]. Pulses and reflexes [we]re 5/5 and equal bilateral. There [wa]s no sign of any venous stasis disease. The patient [wa]s able to walk without an assistive device. Heel to toe walking [wa]s average. [Range of motion] of lumbar spine [wa]s average. Grip strength [wa]s about 5/5 and equal bilaterally. Fine dexterity [wa]s about 4/5 and equal bilaterally. The patient ha[d] no motor deficit in the extremities, but with repetitive use of all extremities she seem[ed] to tire very easily. Neurologically, this [wa]s where the patient [wa]s impressive. When she attempt[ed] to sustain speech, she fatigue[d] easily and ha[d] to look for words and her concentration and mentation [we]re very labored after any kind of prolonged interview. However, [Plaintiff] relate[d] well to [Dr. Choisser] and [his] staff.
>
> Impression:  1. Positive PPD treated prophylactically with INH.
> 2. Asthma/bronchitis requiring hospitalization two times per year.
> 3. Bilateral Carpal Tunnel Syndrome, due to see a hand surgeon soon.
> 4. Crippling Narcolepsy requiring doses of Provigil and still resulting in easy fatigue and mental fatigability and ADD.
> 5. Recommended psychiatric evaluation for depression that [wa]s not responding well to Celexa and for the assessment of the attention deficit.

Tr. at 267. In the Decision, the ALJ did not reference Dr. Choisser's opinion except to state that "[d]uring her interview with Dr. Choisser in January 2003, [Plaintiff] indicated that she suffered from glaucoma[.]" Tr. at 25.

Defendant in substance concedes that the ALJ erred in failing to "specifically state the weight he gave to Dr. Choisser's opinion," but argues that this error is harmless. Def.'s Mem. at 13. The Court need not analyze whether the error is harmless because the matter is due to be remanded for other reasons. On remand, the ALJ shall ensure consideration of Dr. Choisser's opinion, and the ALJ shall state the weight given to Dr. Choisser's opinion.

**C.     The ALJ's RFC Assessment of Plaintiff's Ability to Sit, Stand, and Walk**

Plaintiff argues the ALJ "erred in issuing [an RFC] assessment that is vague and non-specific as to the extent of sitting, standing, and walking that [Plaintiff] can perform." Pl.'s Mem. at 20-21. The ALJ issued the following RFC:

> [Plaintiff can] perform light work, or work which involves lifting no more than [twenty] pounds at a time with frequent lifting or carrying objects weighing up to [ten] pounds, a good deal of walking or standing, or sitting most of the time with some pushing or pulling of arm and leg controls. She is able to climb, balance, stoop, kneel, crouch, and crawl occasionally. She should avoid continuance [sic] exposure to cold. She is not able to work around heights or hazards. She must avoid exposure to pulmonary irritants. She is frequently able to perform gross manipulation, fine manipulation, and reaching in all directions. [Plaintiff] has additional nonexertional imitations associated with her dysthymia and antisocial traits which impact her ability to perform the nonexertional demands of some more complex jobs. However, she is capable of performing simple, routine, repetitive tasks.

Tr. at 22-23.

An RFC is what the claimant is still able to do despite her impairments and is based on all relevant medical and other evidence. 20 C.F.R. §§ 416.945, 416.920(e). An RFC contains both exertional and nonexertional limitations. See Phillips, 357 F.3d at 1242-1243. These limitations include a restriction to a particular physical exertion level (light, medium or heavy) and a particular skill level (unskilled, semi-skilled or skilled). 20 C.F.R. §§ 416.967-968. The Regulations set forth a definition for each level. Id.

It is within the province of the ALJ to determine a claimant's RFC. See Phillips, 357 F.3d at 1238-1239. The RFC determination is used by ALJs at steps four and five of the sequential inquiry to determine whether the claimant can return to her past relevant work under the fourth step, and whether the claimant can adjust to other work under the fifth step. 20 C.F.R. § 416.920(e).

-11-

In assessing Plaintiff's RFC, the ALJ stated, inter alia, that Plaintiff has the ability "to perform light work, or work which involves lifting no more than [twenty] pounds at a time with frequent lifting or carrying objects weighing up to [ten] pounds, a good deal of walking or standing, or sitting most of the time with some pushing or pulling of arm and leg controls." Tr. at 22-23. Plaintiff claims that the phrase "'a good deal' is not used by the Social Security Administration." Pl.'s Mem. at 20. The Court disagrees. The Regulations use the phrase "a good deal" in defining light work as follows:

> Light work involves lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 416.967(b) (emphasis added). Contrary to Plaintiff's contention, the definition of "light work" includes the same phrase "a good deal." See id. It appears the ALJ simply tracked the language of the Regulations. See Tr. at 23.

Plaintiff also claims the Regulations do not specify numerical requirements for walking and standing for exertional limitations, and thus the ALJ should have set forth a numerical value. See Pl.'s Mem. at 21. The Court disagrees. Social Security Ruling ("SSR") 83-10 provides insight into just how much standing and walking "light work" requires:

> [L]ight work [requires] . . . frequent lifting or carrying of objects weighing up to [ten] pounds. . . . "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday. Sitting may occur intermittently during the remaining time.

See SSR 83-10, 1983 WL 31251, at *5-*6. Here, the ALJ determined Plaintiff can perform "light work," Tr. at 22-23, and the ALJ found Plaintiff can "frequent[ly] carry[] and lift[] objects

weighing up to [ten] pounds[.]" Tr. at 22-23.  As the Regulation makes clear, these findings necessarily translate into Plaintiff being able to lift and carry objects up to ten pounds for up to two-thirds of a workday, which requires standing or walking for up to six hours.  See SSR 83-10, 1983 WL 31251, at *5.  Therefore, by stating Plaintiff can walk or stand "a good deal" or sit "most of the time," the ALJ implicitly found Plaintiff capable of standing or walking, off and on, for at least six hours in an eight-hour workday with intermittent sitting in the remaining time.  See id.

Substantial evidence supports the ALJ's finding that Plaintiff can walk or stand "a good deal," i.e. about six hours per day, and sit "most of the time."  The record contains RFC assessments prepared by Donald W. Morford, M.D. ("Dr. Morford") on April 18, 2003, Tr. at 340-47, and Eric C. Puestow, M.D. ("Dr. Puestow"), on September 26, 2003, Tr. at 409-16.  Dr. Morford and Dr. Puestow reported nearly identical exertional limitations for Plaintiff.  Dr. Morford and Dr. Puestow both limited Plaintiff to occasionally lifting and/or carrying twenty pounds; frequently lifting and/or carrying ten pounds; standing and/or walking about six hours in an eight-hour workday; and sitting, with normal breaks, for six hours in an eight-hour workday.  Tr. at 341, 410.  With regard to Plaintiff's push and/or pull limitations, Dr. Morford found Plaintiff limited in her upper extremities.  Tr. at 341.  Dr. Puestow found Plaintiff "unlimited" for push and/or pull limitations "other than as shown for lift[ing] and/or carry[ing]."  Tr. at 410.  The ALJ's findings are consistent with Dr. Morford's and Dr. Puestow's RFC assessments.  Compare Tr. at 341, 410 with Tr. at 22-23.  Specifically, the ALJ's finding that Plaintiff can walk or stand "a good deal" or sit "most of the time" is consistent with Dr. Morford's and Dr. Puestow's opinions that Plaintiff is capable of standing or walking with

normal breaks for at least six hours in an eight-hour workday and capable of sitting with normal breaks for about six hours in an eight-hour workday. Compare Tr. at 341, 410 with Tr. at 22-23. In addition, there is no indication in the record that Plaintiff is incapable of standing or walking "a good deal" or sitting "most of the time." See Tr. at 219, 251-58, 266-69, 270-306, 307-10, 327-29, 360-74, 487-502, 656-58, 659-67, 807-15, 889-94.

The Court finds that the ALJ did state with sufficient specificity the length of time Plaintiff can sit, stand, or walk. The ALJ used the phrase "a good deal," and this phrase necessarily translates to six hours, on and off, during an eight-hour workday, with intermittent sitting in the remaining time. The ALJ's finding in this regard is supported by substantial evidence.

## V. Conclusion

The ALJ did not state whether he considered Plaintiff's fibromyalgia as a severe impairment at step two, and the ALJ did not state whether he considered the effects of fibromyalgia in arriving at the RFC. In addition, the ALJ did not state the reasons for not crediting the opinion of Dr. Choisser. In accordance with the foregoing, it is

**ORDERED:**

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A)     Reevaluate the evidence with respect to Plaintiff's fibromyalgia and determine whether the fibromyalgia is a severe impairment. In addition, consider the effects of fibromyalgia on Plaintiff's functional limitations

        when determining Plaintiff's residual functional capacity;

(B)    Reevaluate the evidence with respect to the opinion of Dr. Choisser, explicitly stating what weight his opinion is given, and provide adequate reasons, supported by substantial evidence, for the weight given; and

(C)    Take such other action as may be necessary to resolve this claim properly.

2.    The Clerk is directed to close the file.

3.    If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b).  See Bergen v. Comm'r of Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on September 30, 2010.

_James R. Klindt_
JAMES R. KLINDT
United States Magistrate Judge

wlg
Copies to:
Counsel of Record